**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| JUST FUTURES LAW; and CENTER FOR CONSTITUTIONAL RIGHTS, <br><br> *Plaintiffs,* <br><br> v. <br><br> UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; and UNITED STATES CUSTOMS AND BORDER PROTECTION, <br><br> *Defendants.* | Civil Action No.: 25-cv-8995 <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

1.     Plaintiffs Just Futures Law ("JFL") and the Center for Constitutional Rights ("CCR") bring this action under the Freedom of Information Act (FOIA), 5 U.S.C. §§ 552 *et seq.*, to compel the release of agency records improperly withheld by Defendants, U.S. Immigration and Customs Enforcement ("ICE") and U.S. Customs and Border Protection ("CBP") as well as offices and components within Defendant agencies, including but not limited to: CBP Office of Field Operations, Digital forensics division of each CBP field office, CBP Office of Intelligence, CBP Office of Policy, CBP Office of Privacy, CBP Chief Counsel, CBP Mission Support Contracting Division, ICE Office of Acquisition Management, ICE Homeland Security Investigations, ICE Enforcement and Removal Operations, ICE Office of Information Governance and Privacy, ICE Office of the Principal Legal Advisor and any other appropriate components, field offices or other parts of ICE or CBP which hold responsive records to Plaintiffs' FOIA request.[1]

---

[1] As noted in Plaintiffs' FOIA Request, CBP has previously stated that the agency "performed advanced searches on over 4,000 electronic devices [in Fiscal Year 2024]. Digital Forensics workload varies across field offices." *See* Attachment to CBP RFI on Digital Forensics (DF) Analytics, CBP No. 70B06C25RFI00137, June 20, 2025, at 1, https://sam.gov/opp/a6263b2d59744928b9c5e564c6e11e9f/view. Based on this reference, there are likely responsive

2.     On July 16, 2025, Plaintiffs submitted two nearly-identical FOIA requests, one to ICE and one to CBP. Each sought records relating to the agencies' contracts with the company Cellebrite. The FOIA Request to ICE additionally sought information related to ICE's contract with the company Paragon. *See* Exhibit 1, Plaintiffs' FOIA Requests.

3.     The Trump administration has drastically expanded the use of existing and new legal authorities to surveil, arrest, and detain immigrants and those supporting immigrant rights in cities and states across the country. There is growing concern about how the administration is using surveillance technologies to aid its enforcement operations. In recent years, ICE and CBP have entered into contracts with two Israeli technology companies, Paragon and Cellebrite, to purchase surveillance technologies at public taxpayers' expense. Yet, little is publicly known about how the administration uses these invasive technologies, such as phone hacking and zero-click spyware, on persons in the U.S. and abroad.

4.     To address the public's urgent need for such critical information, Plaintiffs sought a very specific set of records related to the contracts and agreements between Defendant agencies and each of the two Israel-based companies, including all manuals and training guides and use logs laying out how the software platforms should and should not be used. The public—most specifically immigrants, their families, and advocates, but also any person concerned with civil and human rights—has a compelling and immediate interest in understanding how CBP and ICE intend to operate these software or any similar platforms and whether there are any limitations in place to protect the civil rights of individuals implicated by these technologies.

5.     Defendants and their sub-component offices have unjustifiably failed to produce information or make any determination on the records requested by Plaintiffs within the statutory

---

records across field offices and the relevant division of the field offices which handle digital forensics should be searched for CBP and ICE.

2

timeframe. To vindicate the public's statutory right to information about the government's use of invasive technologies, Plaintiffs seek declaratory, injunctive, and other appropriate relief to compel the agency to immediately process Plaintiffs' Requests and release records that they have unlawfully withheld.

**JURISDICTION AND VENUE**

6.     This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). This Court also has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1346(a)(2).

7.     Venue lies in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(e) and 1402(a), as Plaintiff CCR resides in this district.

**PARTIES**

8.     Plaintiff JFL is a 501(c)(3) non-profit organization that works in partnership with organizers and base-building groups to develop legal and advocacy strategies aimed at addressing criminalization and deportation. JFL disseminates information about the immigration system to the public in accessible ways and is a leader in providing training and support for legal practitioners, community-based organizations, and community members. JFL provides expert information and community-based education on ICE tactics and possible legal and policy remedies.

9.     Plaintiff CCR is a non-profit, public interest legal and advocacy organization headquartered in New York City, New York. CCR engages in the fields of civil and international human rights. CCR's diverse issue areas include litigation and advocacy around immigration, as well as racial and ethnic profiling. One of CCR's primary activities is the publication of newsletters, know-your-rights handbooks, legal analysis of current immigration law issues, and other similar materials for public dissemination. These and other materials are available through

CCR's Development, Communications, and Advocacy Departments. CCR operates a website, ccrjustice.org, which addresses the issues on which CCR works. CCR staff members often serve as sources for journalists and media outlets, including on issues related to racial justice, racial discrimination, and immigrant rights. In addition, CCR regularly issues press releases, has an active social media presence with tens of thousands of followers, and also issues regular email updates sent to over 50,000 supporters about developments and news pertaining to CCR's work.

10.    CBP is a component of the Department of Homeland Security and is an "agency" within the meaning of 5 U.S.C. § 552(f)(1).

11.    ICE is a component of the Department of Homeland Security and is an "agency" within the meaning of 5 U.S.C. § 552(f)(1).

## STATEMENT OF FACTS

### I.    Background

12.    Cellebrite is an Israel-based digital forensics company founded in 1999. It currently contracts with government agencies worldwide. Its website touts "100+ North American Federal Accounts" and its broad use by U.S. federal agencies. Cellebrite provides U.S. government agencies with software and hardware to extract information from phones.[2] In July 2024, Cellebrite issued a press release announcing its continued partnership with U.S. federal agencies including ICE and CBP.[3] Public reports also note that Cellebrite has "a long-standing

---

[2] Rebecca Heilweill, "Immigration and Customs Enforcement continues its work with Cellebrite," Fedscoop, September 19, 2025, *available at*: https://fedscoop.com/immigration-and-customs-enforcement-continues-its-work-with-cellebrite/.

[3] Cellebrite, "Cellebrite Advances Plans to Transform and Elevate its Strategic Relationship with the U.S. Federal Government," July 17, 2024, *available at*: https://cellebrite.com/en/cellebrite-advances-plans-to-transform-and-elevate-its-strategic-relationship-with-the-u-s-federal-government/.

history of partnerships with…DHS,"[4] including three contracts for "software designed to analyze data on a user's existing PC or laptop."[5]

13.    Paragon Solutions is a spyware company founded in Israel in 2019. It has been reported that Paragon's spyware technology "can be used to hack into any mobile phone – including encrypted applications."[6]

14.    Public information shows that ICE has contracted with Cellebrite since at least 2008,[7] and currently has two active contracts with the company which total over 11 million USD.[8] CBP has contracted with Cellebrite since at least 2008 as well,[9] and currently holds at least 20 Cellebrite Software licenses,[10] with another 37 subscriptions having expired recently, in September 2025.[11] ICE entered into a contract with Paragon in September 2024.[12]

---

[4] James Baratta, "Surveillance at the Border," American Prospect, August 5, 2025, *available at*: https://prospect.org/2025/08/05/2025-08-05-border-surveillance-algorithms/.

[5] *See also* Caroline Haskins, "CBP Wants New Tech to Search for Hidden Data on Seized Phones," Wired, July 3, 2025, *available at:* CBP Wants New Tech to Search for Hidden Data on Seized Phones

[6] Stephanie Kirchgaessner, "Ice obtains access to Israeli-made spyware that can hack phones and encrypted apps," The Guardian, September 2, 2025, *available at*: https://www.theguardian.com/us-news/2025/sep/02/trump-immigration-ice-israeli-spyware.

[7] USASpending.gov search for "Cellebrite" by Awarding Agency: U.S. Immigration and Customs Enforcement, *available at*: https://www.usaspending.gov/search?hash=77a85aacfe878ba94bb34f5470191799.

[8] USASpending, Procurement Instrument Identifier 70CMSD25P00000141, *available at*: www.usaspending.gov/award/CONT_AWD_70CMSD25P00000141_7012_-NONE-_-NONE-; USASpending, Procurement Instrument Identifier 70CMSD25FR0000044, *available at*: www.usaspending.gov/award/CONT_AWD_70CMSD25FR0000044_7012_47QSWA18D008F_4732.

[9] USASpending.gov search for "Cellebrite" by Awarding Agency: U.S. Customs and Border Protection, *available a*t: https://www.usaspending.gov/search/?hash=14c283140dafeeecdd17170200dd087d.

[10] USASpending, Procurement Instrument Identifier 70B03C25F00000179, *available at*: https://www.usaspending.gov/award/CONT_AWD_70B03C25F00000179_7014_47QSWA18D008F_4732; USASpending, Procurement Instrument Identifier 70B02C25P00000442, *available at*: www.usaspending.gov/award/CONT_AWD_70B02C25P00000442_7014_-NONE-_-NONE-.; USASpending, Procurement Instrument Identifier 70B03C25F00001235, *available at*: www.usaspending.gov/award/CONT_AWD_70B03C25F00001235_7014_NNG15SC71B_8000; USASpending, Procurement Instrument Identifier 70B03C25P00000210, *available at*: www.usaspending.gov/award/CONT_AWD_70B03C25P00000210_7014_-NONE-_-NONE-; USASpending, Procurement Instrument Identifier 70B03C25F00000179, *available at*: www.usaspending.gov/award/CONT_AWD_70B03C25F00000179_7014_47QSWA18D008F_4732.

[11] USASpending, Procurement Instrument Identifier 70B02C24P00000541, *available at*: www.usaspending.gov/award/CONT_AWD_70B02C24P00000541_7014_-NONE-_-NONE-.; USASpending, Procurement Instrument Identifier 70B02C24P00000433, *available at*: www.usaspending.gov/award/CONT_AWD_70B02C24P00000433_7014_-NONE-_-NONE-.

[12] USASpending, Procurement Instrument Identifier 70CTD024P00000012, *available at*: www.usaspending.gov/award/CONT_AWD_70CTD024P00000012_7012_-NONE-_-NONE-.

15.     The use of these platforms has come under intense scrutiny by human rights organizations and journalists across the globe.[13]

16.     In March 2025, the organization CitizenLab, based at the University of Toronto, published a report documenting how Paragon had been used to spy on human rights activists and journalists in countries such as Italy, Australia, Canada, and Denmark,[14] and provided the first forensic confirmation of the spyware's use.[15]

17.     In 2023, President Biden signed an executive order that aimed to restrict the U.S. government's use of commercial spyware technology "that poses significant counterintelligence or security risks to the United States Government or significant risks of improper use by a foreign government or foreign person."[16] The Biden administration paused ICE's contract with Paragon in 2024 to review and verify compliance with the executive order.[17] However, the "stop work order" was lifted in August 2025, which permitted the contract to continue until September of this year.[18]

## II.     Compelling Necessity for Records Sought

18.     In September 2025, ICE reactivated its contract with Paragon.[19]

---

[13] Amnesty International, "Europe: Paragon attacks highlight Europe's growing spyware crisis," March 19, 2025, *available at*: https://securitylab.amnesty.org/latest/2025/03/europe-paragon-attacks-highlight-europes-growing-spyware-crisis; Antony Loewenstein, "How Israeli Spyware Endangers Activists Across the Globe," In These Times, June 13, 2023, *available at*: https://inthesetimes.com/article/how-israeli-spyware-endangers-activists.

[14] Bill Marczak, *et al.*, "Virtue or Vice? A First Look at Paragon's Proliferating Spyware Operations," The Citizen Lab, March 19, 2025, *available at*: https://citizenlab.ca/2025/03/a-first-look-at-paragons-proliferating-spyware-operations.

[15] Bill Marczak and John Scott-Railton, "Graphite Caught," The Citizen Lab, 12 June 2025, *available at*: https://citizenlab.ca/2025/06/first-forensic-confirmation-of-paragons-ios-mercenary-spyware-finds-journalists-targeted.

[16] Exec. Order No. 14,093 § 1, Prohibition on Use by the United States Government of Commercial Spyware That Poses Risks to National Security, 88 Fed. Reg. 18,957 (March 30, 2023).

[17] Vas Panagiotopoulos, "ICE's $2 Million Contract With a Spyware Vendor Is Under White House Review," Wired, October 21, 2024, available at: https://www.wired.com/story/ice-paragon-contract-white-house-review/.

[18] USASpending, Procurement Instrument Identifier, 70CTD024P00000012, *available at*: www.usaspending.gov/award/CONT_AWD_70CTD024P00000012_7012_-NONE-_-NONE-.

[19] Jack Poulson, "Exclusive: ICE reactivated its $2 million contract with Israeli spyware firm Paragon, following its acquisition by U.S. capital," All Source Intelligence, September 1, 2025, *available at*: https://jackpoulson.substack.com/p/exclusive-ice-has-reactivated-

19.     On October 6, 2025, several U.S. Congressmembers sent a letter to DHS voicing their urgent concerns over ICE's use of Paragon "Graphite" software.[20]

20.     Since Plaintiffs' filing of their FOIA request, Cellebrite has also extended its contracts with ICE and potentially CBP as well, according to limited publicly available information.[21]

21.     The details of ICE and CBP's connections with Paragon and Cellebrite are of great concern to immigrant communities, their families and advocates— such as JFL and CCR— across the country, as well as the general public. The lack of information regarding the degree to which ICE and CBP are using software platforms like Paragon and Cellebrite, while they send thousands of masked agents to surveil, arrest, and detain individuals in cities across the United States, underscores the urgency to inform the public about the agencies' use of these technologies.

22.     ICE and CBP's use of Cellebrite's technology to surveil and potentially criminalize First Amendment protected activity could likely result in the loss of due process rights. ICE's use of Paragon's spyware may further undermine individuals' due process rights by violating federal laws prohibiting unlawful interception of electronic communications and storage. *See e.g.* 18 U.S.C. §§ 2510-2523; 18 U.S.C. § 1030.

23.     From before Trump took office through today, there continues to be national media interest in how ICE and CBP—as well as other DHS agencies—are using the surveillance

---

its?publication_id=1269175&post_id=172515924&isFreemail=true&r=2d1umf&triedRedirect=true&utm_source=substack&utm_medium=email.

[20] Press Release, "Reps. Lee, Brown, Ansari Demand Answers from DHS on Use of Foreign Spyware by ICE," Congresswoman Summer Lee, October 6, 2025, *available at*: https://summerlee.house.gov/newsroom/press-releases/reps-lee-brown-ansari-demand-answers-from-dhs-on-use-of-foreign-spyware-by-ice.

[21] Heilwell, *supra* note 2.

tools that they are investing significant public funds towards, and whether people across the country can trust the agencies' use of such powerful and dangerous software.[22]

### III.     Plaintiffs' Requests for Information

*FOIA Request to ICE*

21.     On July 16, 2025, Plaintiffs submitted their FOIA request via the online web platform Secure Release to ICE.

22.     On July 18, 2025, ICE sent an acknowledgement email to Plaintiffs which assigned the request the tracking number #2025-ICFO-49353 and denied Plaintiffs' request for expedited processing. It also requested an additional 10 working days for responding as provided by statute.

23.     On September 3, 2025, Plaintiffs appealed ICE's denial of expedited processing.

24.     On September 30, 2025, Defendant ICE responded to Plaintiffs' expedited processing appeal and affirmed its denial. ICE's letter also acknowledged the agency had not yet made a determination on Plaintiffs' FOIA request.

25.     To date, Plaintiffs have received no other response from ICE to their FOIA request.

*FOIA Request to CBP*

26.     On July 16, 2025, Plaintiffs submitted their FOIA request via the online web platform Secure Release to CBP.

---

[22] *See* Thomas Brewster, "ICE Spent Millions On Phone Hacking Tech, Just In Time For Trump's Mass Deportation Plans," Forbes, November 25, 2024, available at: https://www.forbes.com/sites/thomasbrewster/2024/11/25/ice-spent-millions-on-phone-hacking-tech-just-in-time-for-trumps-mass-deportation-plans/; Derrick Broze, "Meet the Spyware Companies Preparing to Unleash Their Tech During Trump's 2nd Term," The Last American Vagabond, Nov 30, 2024, *available at*: https://www.thelastamericanvagabond.com/spyware-unleash-trump-2nd-term/; ERIKA KINETZ and PAOLO SANTALUCIA, "US-backed Israeli company's spyware used to target European journalists, Citizen Lab finds," Associated Press, June 12, 2025, available at: https://apnews.com/article/spyware-italy-paragon-meloni-pegasus-f36dd32106f44398ee24001317ccf2bb; Stephanie Kirchgaessner, "European journalists targeted with Paragon Solutions spyware, say researchers," The Guardian, June 12, 2025, *available at*: https://www.theguardian.com/media/2025/jun/12/european-journalists-targeted-with-paragon-solutions-spyware-say-researchers; Joseph Menn, "Report details spyware use against Italian activists and journalist," Washington Post, March 3, 2025, *available at*: https://www.washingtonpost.com/technology/2025/03/19/italy-paragon-spyware-report/.

27.     On September 23, 2025, Defendant CBP acknowledged Plaintiffs' FOIA request via email and assigned it the tracking number CBP-FO-2025-164752.

28.     On October 9, 2025, the Secure Release online portal showed that CBP had "granted" Plaintiffs' request for a fee waiver and "denied" Plaintiffs' request for expedited processing. However, to date Plaintiffs have not received any notification or correspondence related to either the fee waiver or expedited processing requests, as required by 5 U.S.C. § 552(a)(6)(E)(ii)(I), 6 C.F.R. § 5.5(e)(4).

29.     To date, Plaintiffs have received no other response from CBP to their FOIA request.

30.     Plaintiffs' Requests sought expedited processing under 5 U.S.C. § 552(a)(6)(E)(i)(I), citing a "compelling need" for the information because of the urgent need to inform the public of how ICE and CBP are using Cellebrite and Paragon technology and to what extent it is being used to monitor First Amendment-protected activity, including political protests and the work of journalists and other advocates. The requests also explained that the use of this technology implicates the loss of due process rights and has been the subject of widespread national media interest, further necessitating expedited processing.

31.     Plaintiffs' Requests also sought a waiver of applicable fees under 5 U.S.C. § 552(a)(4)(A)(iii); 6 C.F.R. § 5.11(k)(1), because "disclosure of the requested records is in the public interest because it is likely to contribute significantly to the public understanding of the activities or operations of the government and is not primarily in the commercial interest of the requester." JFL and CCR are non-profit entities with no commercial interest in the records requested, which are crucial to public understanding of Defendants' operations. Defendants have not responded to Plaintiffs' requests for fee waivers.

## CLAIMS FOR RELIEF

### First Claim for Relief:

### Violation of FOIA for Failure to Disclose and Release Responsive Records

32.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 31 as if repeated and incorporated herein.

33.     By failing to make a determination on Plaintiffs' FOIA requests within the mandated statutory timeframe, by failing to disclose and release the requested records, and by failing to conduct an adequate search reasonably calculated to uncover responsive records, Defendants have violated the public's right, advanced by the Plaintiffs, to agency records under 5 U.S.C. §§ 552 *et seq*.

### Second Claim for Relief:

### Violation of FOIA for Improper Denial of Plaintiffs' Request for Expedited Processing

34.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 31 as if repeated and incorporated herein.

35.     By denying or failing to respond timely to Plaintiffs' requests for expedited processing, Defendants have violated Plaintiffs' rights under 5 U.S.C. § 552(a)(6)(E) and Defendants' own regulations.

### Third Claim for Relief:

### Violation of FOIA for Improper Denial of Plaintiffs' Request for Fee Waiver

36.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 31 as if repeated and incorporated herein.

37.     By failing to respond or failing to non-conditionally grant Plaintiffs' requests for fee waivers, Defendants have denied Plaintiffs' rights under 5 U.S.C. § 552(a)(4)(A)(iii) and Defendants' own regulations.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

(a)    Order Defendants immediately to make a full, adequate, and expedited search for the requested records;

(b)    Order Defendants to engage in expedited processing in this action;

(c)    Enjoin Defendants from assessing fees or costs for the processing of the FOIA Requests;

(d)    Order Defendants to disclose the requested records in their entirety and make copies available to Plaintiffs no later than ten days after the Court's order;

(e)    Award Plaintiffs their costs and reasonable attorney's fees incurred in this action as provided by 5 U.S.C. § 552(a)(4)(E); and

(f)    Grant each other and further relief as this Court may deem just and proper.

Dated: October 30, 2025
New York, NY

*/s/* Samah Sisay
Samah Sisay
Center for Constitutional Rights
666 Broadway, 7th FL
New York, NY 10012
Tel: (212) 614-6484
ssisay@ccrjustice.org

Amber Qureshi*
Law Office of Amber Qureshi, LLC
6925 Oakland Mills Rd, PMB #207
Columbia, MD 21045
Tel: (443) 583-4353
amber@qureshilegal.com

*\* Pro hac vice motion forthcoming*
*Counsel for Plaintiffs*

11