# EXHIBIT 1

 

U.S. Immigrations and Customs Enforcement
Freedom of Information Act Office
500 12th Street SW, Stop 5009,
Washington, D.C. 20536-5009

*Via Secure Release Portal*

July 16, 2025

**Re: Contracts awarded by ICE to companies Paragon Solutions and Cellebrite**

Dear FOIA Officer:

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 and its implementing regulations, 6 C.F.R. § 5.1 et seq, Just Futures Law and the Center for Constitutional Rights request records pertaining to **all ICE contracts and related records with the company Paragon Solutions or the company Cellebrite from 2021 to present**.

Responsive documents should include but are not limited to:

> *(1) Any solicitation, contract or order for technology, work performed, licenses and/or software with Paragon Solutions.*[1]
>
> *(2) Any solicitation, contract or order for technology, work performed, licenses and/or software with Cellebrite.*[2]
>
> *(3) Copies of all accompanying Statements(s) of Work or Performance Work Statement(s), Limited Source Justification or Justification for Other than Full and Open Competition, as well as any attachments or modifications.*
>
> *(4) Any training manual, field manual, user manual, operating instructions, directive and/or user logs showing:*
>> *a) how agency personnel should use or does use the technology from Paragon*

---

[1] Wired reported on at least one of these contracts in October 2024. *See* "ICE Signs $2 Million Contract With Spyware Maker Paragon Solutions," Wired, Oct. 1, 2024, https://www.wired.com/story/ice-paragon-solutions-contract.

[2] There are multiple reports on ICE's contract(s) with Cellebrite. *See* Thomas Brewster, "The Wiretap: ICE's Big Spending On Phone Hacking Tech," Forbes, Nov. 26, 2024, https://www.forbes.com; Blake Montgomery, "ICE Has a New $30M Contract With Israeli Phone Cracking Company Cellebrite," The Daily Beast, Sept. 2019, https://www.thedailybeast.com/ice-has-a-new-dollar30m-contract-with-israeli-phone-cracking-company-cellebrite/

> *Solutions and/or Cellebrite;*
> b) *any limitations or restrictions related to agency use of the technology.*

*(5) The following government contracts and related records:*

*Award ID 70CTD024P00000012 (Paragon Solutions)*
*Award ID 70CMSD24FR0000139 (Cellebrite)*

We ask that ICE search all appropriate headquarters and field offices and custodians, including but not limited to:

- Office of Acquisition Management
- Homeland Security Investigations (HSI): Domestic Operations, all domestic field offices, Cyber and Operational Technology including HSI Innovation Lab and the Cyber Crimes Center, International Operations, and Office of Intelligence
- Enforcement and Removal Operations (ERO)
- Office of Information Governance and Privacy
- Office of the Principal Legal Advisor.

A. <u>Fee Waiver Request</u>

Requesters seek a fee waiver for this request. In prior FOIA requests, Requesters have received fee waivers by government agencies including FOIA Requests CBP-2020-060295, CBP-2021-008288, and ICE-2022-ICFO-13889.

Requesters seek a waiver of processing (search and review) fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by ... a representative of the news media . . ."); 5 U.S.C. § 552(a)(4)(A)(iii) ("Documents shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."). *See also* 6 C.F.R. § 5.11(d)(1). That provision should be "liberally construed in favor of waivers for noncommercial requestors." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003).

*1. Release of the requested records is in the public interest.*

The records requested will contribute significantly to public understanding of the government's operations or activities. Under 6 C.F.R. § 5.11(k)(2), the following factors are to be considered in determining whether a disclosure is in the public interest: (i) whether the subject of the requested records concerns "the operations or activities of the government"; (ii) whether the disclosure is "likely to contribute" to an understanding of government operations or activities; (iii) whether disclosure of the requested information will contribute to "public understanding," that is, "the understanding of a reasonably broad audience of persons interested in the subject"; and (iv) whether disclosure is likely to contribute "significantly" to public understanding of government operations or activities. *See* 6 C.F.R. § 5.11(k)(2)(i)-(iv).

2

Each of these considerations is satisfied here. First, the records requested pertain directly to "operations or activities" of the federal government: specifically, how the agency deploys invasive technologies such as phone hacking and zero-click spyware on persons in the U.S. and abroad. It is essential that members of the public have a clear understanding of whether and to what extent the government complies with Constitutional rights, civil rights and other legal obligations. Second, this request is "likely to contribute" to a public understanding of government operations or activities by answering these pressing questions for the public and lawmakers.

Third, disclosure of the requested information will contribute to "the understanding of a reasonably broad audience of persons interested in the subject." Requesters will publish responsive records and their analysis through reports, online posts or other media to raise public awareness of the agency's use of data extraction, collection, sharing, and analysis in its enforcement actions. Moreover, Requesters will use the records to inform legal know-your-rights presentations and training for the public. Using records produced from prior FOIA requests, Requesters have previously published reports, fact sheets, and legal resources on federal and local government agency use of data collection, sharing, and analysis, which has reached a broad audience and garnered significant public attention.[3]

Finally, disclosure will contribute "significantly" to the public understanding of the agency's increasing use of invasive technology in making determinations related to detention and surveillance of persons in the United States and beyond. The requested records will meaningfully inform the public debate over government use of invasive surveillance technologies. *See e.g.* Tom Bennet, "Spyware firm cuts Italy access after alleged targeting of activists – reports," BBC News, Feb. 6, 2025, https://www.bbc.com/news/articles/cvgmzdjw24yo; "ICE Signs $2 Million Contract With Spyware Maker Paragon Solutions," Wired, Oct. 1, 2024, https://www.wired.com/story/ice-paragon-solutions-contract/; Thomas Brewster, "The Wiretap: ICE's Big Spending On Phone Hacking Tech," Forbes, Nov. 26, 2024, https://www.forbes.com; Jay Stanley, "Mobile Phone Cloning Tools Need to Be Subject to Oversight and the Constitution," ACLU, May 16, 2017 https://www.aclu.org/news/privacy-technology/mobile-phone-cloning-tools-need-be-subject-oversight-and.

*2. Disclosure of the information requested is not in the Requesters' commercial interest.*

Disclosure of the information requested is not in the commercial interest of Requesters. 6

---

[3] *See*, *e.g.*, Johana Bhuiyan, "Revealed: the contentious tool US immigration uses to get your data from tech firms," The Guardian, May 25, 2023, https://www.theguardian.com/us-news/2023/may/25/us-immigration-surveillance-google-twitter-meta-personal-data; Cyberscoop, *How a Private Company Helps ICE Track Migrants' Every Move*, Sept. 26, 2023, https://cyberscoop.com/ice-bi-smartlink/ (referencing JFL & Mijente factsheet on FOIA records relating to the electronic monitoring of immigrants); Frank Bajak, *Report: Mobile Fingerprinting a Core Tool in US Deportations*, Associated Press, Nov. 23, 2020, https://apnews.com/article/donald-trump freedom-of-information-freedom-of-information-act-lawsuits-immigration0fac264dc20da65c3e5924174f9db5aa (referencing the Mijente & JFL report "Meet EDDIE: Biometric Tech Used against Immigrant Communities"); Just Futures Law, Factsheet: Whitehouse Office of Science & Technology Policy Tech Surveillance Response to COVID-19 (July 2021), https://justfutureslaw.org/wp content/uploads/2020/07/OSTP.2020-07-28.FACTSHEET.pdf.

C.F.R. § 5.11(b). Requesters are non-profit organizations that intend to disseminate the information gathered by this request to the public at no cost, including through the Requesters' websites and social media.

For these reasons, this request for a full fee waiver should be granted. Alternatively, if the full fee  waiver is not granted, Requesters seek all applicable reductions in fees. Further, if no fee waiver is granted and the anticipated costs associated with this request exceed $250.00, please notify Requesters to obtain consent and provide an estimate of the additional fees.

  B.  Request for Expedited Processing

We request expedited processing of our Request pursuant to applicable law and regulations. 5 U.S.C. § 552(a)(6)(E)(I); 6 C.F.R.  § 5.5(e)(1)(ii)–(iv). There is a "compelling need" for these records, as defined in the statute and regulations, because the information requested is urgently needed by organizations primarily engaged in disseminating information in order "to inform the public about actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II); 6 C.F.R. § 5.5(e)(ii).

Furthermore, the use of Cellebrite by ICE to surveil and potentially criminalize First Amendment-protected activity could likely result in the loss of due process rights. 6 C.F.R. § 5.5(e)(iii). As ICE is "one of Cellebrite's largest customers," it is imperative to understand how often they are using these platforms.[4] Additionally, use of Paragon Solutions spyware, particularly in the United States, may violate protections enshrined by the Fourth Amendment and related federal laws prohibiting unlawful interception of electronic communications and storage. *See e.g.* 18 U.S.C. §§ 2510-2523; 18 U.S.C. § 1030.

Finally, as shown in Section A of this request, widespread national media interest in the use of Cellebrite by U.S. law enforcement agencies has been ongoing for many years, fulfilling the fourth prong of DHS's expedited processing regulations. 6 C.F.R. § 5.5(e)(iv). The records produced from this FOIA request are urgently needed by advocates to provide transparency to the public regarding how ICE is using this technology.

**Conclusion**

We look forward to your reply to this request within twenty (20) business days, as required under 5 U.S.C. § 552(a)(6)(A)(I). If the Request is denied in whole or in part, we ask that you justify all withholdings by reference to specific exemptions to the FOIA. We also ask that you release all segregable portions of otherwise exempt material.

We request that the records be made available electronically, by e-mail attachment if available (via foia@justfutureslaw.org) or CD-ROM if not.

For any questions regarding this request, please contact counsel Ms. Mao at foia@justfutureslaw.org.

---

[4] https://appleinsider.com/articles/25/06/05/cellebrite-acquires-iphone-virtualization-firm-corellium-for-200m

Thank you for your consideration.


Just Futures Law
1629 K St. NW Suite 300
Washington, D.C. 20006
foia@justfutureslaw.org

 

U.S. Customs and Border Protection
Freedom of Information Act Office
U.S. Customs and Border Protection
1300 Pennsylvania Avenue NW
Washington, D.C. 20229-1181

*Via Secure Release Portal*

July 16, 2025

**Re: Contracts awarded by CBP to Cellebrite**

Dear FOIA Officer:

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 and its implementing regulations, 6 C.F.R. § 5.1 et seq, Just Futures Law and the Center for Constitutional Rights request records pertaining to **all CBP contracts and related records with the company Cellebrite from 2021 to present**.[1]

Responsive documents should include but are not limited to:

> *(1) Any solicitation, contract or order for technology, work performed, licenses and/or software with Cellebrite.*
>
> *(2) Any accompanying Statements(s) of Work or Performance Work Statement(s), Limited Source Justification or Justification for Other than Full and Open Competition, as well as any attachments or modifications.*
>
> *(3) Any training manual, field manual, user manual, operating instructions, directive and/or user log describing:*
>> *a) how agency personnel should use or does use the technology;*
>> *b) any limitations or restrictions related to agency use of the technology.*
>
> *(4) The following government contracts and related records:*

---

[1] A list of CBP contracts with Cellebrite is here:
https://www.usaspending.gov/search/?hash=34df1ead0a3eb58467035561e33d9a70

Award ID 70B03C25P00000210 (Cellebrite)
Award ID 70B03C25F00000179 (Cellebrite)
Award ID 70B02C24P00000541 (Cellebrite)
Award ID 70B03C24P00000667 (Cellebrite)
Award ID 70B03C24P00000557 (Cellebrite)
Award ID 70B02C24P00000433 (Cellebrite)
Award ID 70B03C24P00000561 (Cellebrite)
Award ID 70B03C24P00000281 (Cellebrite)

We ask that CBP search all appropriate headquarters and field offices and custodians, including but not limited to:

- Office of Field Operations
- Digital forensics division of each CBP field offices[2]
- Office of Intelligence
- Office of Policy
- Office of Privacy
- Chief Counsel
- Mission Support Contracting Division.

A. <u>Fee Waiver Request</u>

Requesters seek a fee waiver for this request. In prior FOIA requests, Requesters have received fee waivers by government agencies including FOIA Requests CBP-2020-060295, CBP-2021-008288, and ICE-2022-ICFO-13889.

Requesters seek a waiver of processing (search and review) fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by ... a representative of the news media . . ."); 5 U.S.C. § 552(a)(4)(A)(iii) ("Documents shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."). *See also* 6 C.F.R. § 5.11(d)(1). That provision should be "liberally construed in favor of waivers for noncommercial requestors." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003).

1. *Release of the requested records is in the public interest.*

The records requested will contribute significantly to public understanding of the government's operations or activities. Under 6 C.F.R. § 5.11(k)(2), the following factors are to be considered in

---

[2] In a recent request for information, CBP stated that the agency "*performed advanced searches on over 4,000 electronic devices [in Fiscal Year 2024]. Digital Forensics workload varies across field offices*." *See* Attachment to CBP RFI on Digital Forensics (DF) Analytics, CBP No. 70B06C25RFI00137, June 20, 2025, at 1, https://sam.gov/opp/a6263b2d59744928b9c5e564c6e11e9f/view (emphasis added). Based on this reference, we believe there are responsive records across field offices and we request that the relevant division of the field offices which handle digital forensics be searched.

2

determining whether a disclosure is in the public interest: (i) whether the subject of the requested records concerns "the operations or activities of the government"; (ii) whether the disclosure is "likely to contribute" to an understanding of government operations or activities; (iii) whether disclosure of the requested information will contribute to "public understanding," that is, "the understanding of a reasonably broad audience of persons interested in the subject"; and (iv) whether disclosure is likely to contribute "significantly" to public understanding of government operations or activities. *See* 6 C.F.R. § 5.11(k)(2)(i)-(iv).

Each of these considerations is satisfied here. First, the records requested pertain directly to "operations or activities" of the federal government: specifically, how the agency deploys invasive technologies such as phone hacking and zero-click spyware on persons in the U.S. and abroad. It is essential that members of the public have a clear understanding of whether and to what extent the government complies with Constitutional rights, civil rights and other legal obligations. Second, this request is "likely to contribute" to a public understanding of government operations or activities by answering these pressing questions for the public and lawmakers.

Third, disclosure of the requested information will contribute to "the understanding of a reasonably broad audience of persons interested in the subject." Requesters will publish responsive records and their analysis through reports, online posts or other media to raise public awareness of the agency's use of data extraction, collection, sharing, and analysis in its enforcement actions. Moreover, Requesters will use the records to inform legal know-your-rights presentations and training for the public. Using records produced from prior FOIA requests, Requesters have previously published reports, fact sheets, and legal resources on federal and local government agency use of data collection, sharing, and analysis, which has reached a broad audience and garnered significant public attention.[3]

Finally, disclosure will contribute "significantly" to the public understanding of the agency's increasing use of invasive technology in making determinations related to detention and surveillance of persons in the United States and beyond. The requested records will meaningfully inform the public debate over government use of invasive surveillance technologies. *See e.g.* Caroline Haskins, "CBP wants new tech to search for hidden data on seized phones," Wired, July 3, 2025, https://www.wired.com/story/cbp-wants-new-tech-to-search-for-hidden-data-on-seized-phones/; Ryan Naraine, "Amnesty Reveals Cellebrite Zero-Day Android Exploit on Serbian Student Activist," Security Week, Feb. 28, 2025, https://www.securityweek.com/amnesty-

---

[3] *See*, *e.g.*, Johana Bhuiyan, "Revealed: the contentious tool US immigration uses to get your data from tech firms," The Guardian, May 25, 2023, https://www.theguardian.com/us-news/2023/may/25/us-immigration-surveillance-google-twitter-meta-personal-data; Cyberscoop, *How a Private Company Helps ICE Track Migrants' Every Move*, Sept. 26, 2023, https://cyberscoop.com/ice-bi-smartlink/ (referencing JFL & Mijente factsheet on FOIA records relating to the electronic monitoring of immigrants); Frank Bajak, *Report: Mobile Fingerprinting a Core Tool in US Deportations*, Associated Press, Nov. 23, 2020, https://apnews.com/article/donald-trump freedom-of-information-freedom-of-information-act-lawsuits-immigration0fac264dc20da65c3e5924174f9db5aa (referencing the Mijente & JFL report "Meet EDDIE: Biometric Tech Used against Immigrant Communities"); Just Futures Law, Factsheet: Whitehouse Office of Science & Technology Policy Tech Surveillance Response to COVID-19 (July 2021), https://justfutureslaw.org/wp content/uploads/2020/07/OSTP.2020-07-28.FACTSHEET.pdf.

3

reveals-cellebrite-zero-day-android-exploit-on-serbian-student-activist/; Thomas Brewster, "The Wiretap: ICE's Big Spending On Phone Hacking Tech," Forbes, Nov. 26, 2024, https://www.forbes.com; Jay Stanley, "Mobile Phone Cloning Tools Need to Be Subject to Oversight and the Constitution," ACLU, May 16, 2017 https://www.aclu.org/news/privacy-technology/mobile-phone-cloning-tools-need-be-subject-oversight-and.

   *2.  Disclosure of the information requested is not in the Requesters' commercial interest.*

Disclosure of the information requested is not in the commercial interest of Requesters. 6 C.F.R. § 5.11(b). Requesters are non-profit organizations that intend to disseminate the information gathered by this request to the public at no cost, including through the Requesters' websites and social media.

For these reasons, this request for a full fee waiver should be granted. Alternatively, if the full fee waiver is not granted, Requesters seek all applicable reductions in fees. Further, if no fee waiver is granted and the anticipated costs associated with this request exceed $250.00, please notify Requesters to obtain consent and provide an estimate of the additional fees.

   B.  Request for Expedited Processing

We request expedited processing of our Request pursuant to applicable law and regulations. 5 U.S.C. § 552(a)(6)(E)(I); 6 C.F.R.  § 5.5(e)(1)(ii)–(iv). There is a "compelling need" for these records, as defined in the statute and regulations, because the information requested is urgently needed by organizations primarily engaged in disseminating information in order "to inform the public about actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II); 6 C.F.R. § 5.5(e)(ii). Furthermore, the use of Cellebrite by CBP to surveil and potentially criminalize First Amendment-protected activity could likely result in the loss of due process rights. 6 C.F.R. § 5.5(e)(iii). A 2018 DHS Privacy Assessment noted that "privacy risk concerns CBP's potential over-collection of information from individuals due to the volume of information that is either stored on, or accessible by, today's electronic devices."[4] Seven years later, such concerns are even more relevant. Under the new Trump administration, CBP has sought new forensic tools to break into seized phones, computers and electronic devices.[5] Other DHS component agencies – especially ICE – have already contracted to use Cellebrite for many years, including during the first Trump administration. The potential use of Cellebrite by law enforcement such as CBP to monitor the activities of First Amendment-protected activity, including political protests and the work of journalists and other advocates, is a critical and immediate concern. Recent reporting shows that Cellebrite leadership is also friendly with the Trump administration and Department of Justice.[6]

Finally, as shown in Section A of this request, widespread national media interest in the use of Cellebrite by U.S. law enforcement agencies has been ongoing for many years, fulfilling the fourth prong of DHS's expedited processing regulations. 6 C.F.R. § 5.5(e)(iv). The records

---

[4] Privacy Impact Assessment Update for CBP Border Searches of Electronic Devices DHS/CBPIPIA-008(a) January 4, 2018.
[5] Caroline Haskins, "CBP wants new tech to search for hidden data on seized phones," Wired, July 3, 2025, https://www.wired.com/story/cbp-wants-new-tech-to-search-for-hidden-data-on-seized-phones/.
[6] https://www.forbes.com/sites/thomasbrewster/2025/06/05/trump-pardoned-corellium-founder-now-selling-cyber-business-to-cellebrite/.

4

produced from this FOIA request are urgently needed by advocates to provide transparency to the public regarding how CBP is using this technology.

**<u>Conclusion</u>**

We look forward to your reply to this request within twenty (20) business days, as required under 5 U.S.C. § 552(a)(6)(A)(I). If the Request is denied in whole or in part, we ask that you justify all withholdings by reference to specific exemptions to the FOIA. We also ask that you release all segregable portions of otherwise exempt material.

We request that the records be made available electronically, by e-mail attachment if available (via foia@justfutureslaw.org) or CD-ROM if not.

For any questions regarding this request, please contact counsel Yihong Mao at foia@justfutureslaw.org.

Thank you for your consideration.

Just Futures Law
1629 K St. NW Suite 300
Washington, D.C. 20006
foia@justfutureslaw.org

5